in the case of the United States of America versus Gregory Bogomol and we're here entertaining your arguments. I believe Mr. Greenlee is first. So you have 15 minutes Mr. Greenlee and five minutes on the button. Thank you your honors. Good afternoon and may it please the court. My name is Andrew Greenlee and I'm here on behalf of the appellant Mr. Gregory Bogomol. Your honors the evidence presented to the district court established that law enforcement gained consent to enter the residence by telling Mr. Bogomol's wife that they were the victims of identity theft. Law enforcement also led Mr. Bogomol to believe that they were investigating the theft of his credit card. These were lies. The agent had come to his house to gather evidence against Mr. Bogomol because they suspected him after a 14-month investigation of child pornography offenses. The lies told by law enforcement initiated any consent to either enter the residence or to search the electronic devices. Although Mr. Bogomol's attorney knew of the facts that could have served as a predicate for a meritorious motion to suppress defense counsel failed to file one or for that matter even to advise Mr. Bogomol of the suppression issue. Therefore since Mr. Bogomol received ineffective assistance of counsel this court should remand for an order vacating his conviction or alternatively for an evidentiary hearing. Your honors I'd like to address two of the primary arguments on the part of the government. The first is is the claim that it was quote not materially false that they were there for to investigate identity theft. This is there's simply no evidence in the record to support the at all concern that someone was using either Mr. or Mrs. Bogomol's identity on the internet. I thought they didn't get a search warrant because there was uncertainty. You know his his credit card was being used but someone else's name and I thought there was uncertainty about whether he was actually involved which is part of why they they didn't have a search warrant which would have rendered this whole consent meaningless. Your honor I think that they probably should have gotten a search warrant. I think that there were grounds to get a search warrant. We know that Mr. Bogomol was the subject of the current investigation and that's in the record at page 80 in the first report of investigation. They knew that his credit card I didn't believe that his credit card it was it was linked to Mr. Bogomol. I didn't see anywhere in the record where they thought that it was linked to anybody else other than Mr. Bogomol. There was the one place that's what I'm saying it was his credit card but someone else another person another name was was on the internet soliciting a female that was the whole scheme was a female would solicit pictures from young boys. But your honor the the kick application that was used involved the letters G and B which corresponds to Gregory Bogomol so they knew that they knew the cellular phone was linked to Mr. Bogomol. The investigators had targeted Mr. Bogomol and found out that he was a high school teacher who resided in Fort Worth Texas and there was nothing in any of the reports to suggest that anyone believed that identity theft was an issue. And we also know that law enforcement told Mr. Bogomol that the reason why they had came why they had come to his house in the first case was to investigate identity theft. Let me ask this I'm a little confused about the sequence of events at the house. Okay. So wife answers the door as I understand it and that's when this comment is made about someone might be using your ID. Correct. Then they go inside and then once they see the defendants that's when they do talk about what their agents who investigate child exploitation type cases. That's correct your honor. So if if your clients consent to search the phone is an issue just searching his phone if he wasn't part of the discussion about identity theft why did it why does it affect his consent? It was just the wife who heard the identity theft. Well I think the that first of all your honor that the sequence of events that you described is in my to my understanding that's correct. The first point is that it's his home that they entered and the threshold of the house matters. It matters quite a lot for fourth amendment purposes and in Payton versus New York they had a very extensive discussion of this. They said quote the zone of privacy was bounded by the unambiguous physical dimensions of an individual's homes and they said they stressed that that what mattered is the breach of the entrance to an individual's home. And so that's the wife's consent though so it's a wife's consent that was infected by this supposed misstatement. Well that may be true but I think that even if I think that as soon as they got into the house they encountered Mr. Bogumal as well and he wasn't given the opportunity to object to their entrance in the first place. And we also know that the second part after they mentioned that it was related so let me back up sorry my first point is that there was a fourth amendment violation even before anything was said about child exploitation but they also led Mr. Bogumal to believe that he was the victim of identity theft because in if you read the testimony when he when he gave his consent agent Johnson testified quote they both told me they were employed by the school district and I take it from that that it was clear that they thought that they were assisting with an investigation into a crime that had been committed by someone else and not by them. And for that reason we believe that this is that would would have rendered the consent invalid. And on this point your honors I'd like to draw the court's attention. Once they say we're looking into child exploitation that's what we do I mean then he can't I mean I have a hard time then seeing how he's being misled I mean he he knows what's on that phone is not good for him it's horrible. So yeah I have a hard time seeing that. I thought it was all based on the initial you know identity theft reference. Well that that is part of it and that's the primary argument is that even entering the house in the first place before they even mentioned anything about child exploitation they told they gained consent by telling these people that they were the victims of identity theft which which was simply not the case especially with regard to Mrs. Bogomol. There's no evidence in the record that anybody believed that her identity had been stolen. Your honors I'd like to draw the court's attention to United States versus Parson. It's a case cited in our reply brief and it's published at 599 Federal Supplement 2nd 592. It's a it's a district court case pardon me but the facts are very very analogous. They told the victim that he was or they told the defendant that he was the victim of identity theft and the court in that case suppressed the evidence on that basis and they said and this is important in footnote 6 quote the government did not present any legitimate evidence that identity theft had occurred or was a concern it was simply not a plausible scenario and it's our position that the same could be said about the record in this case. I'd also like to point the court's attention to Pagan Gonzalez versus Moreno which is a 2019 case from the first circuit and that's analogous so far as the FBI and law enforcement officers told the defendant that a modem in the house was sending a signal and or viruses to computers in Washington. So to me those are the cases that are more analogous than United States versus Davis which the government relies on where essentially they told the defendant the truth. They were investigating guns specifically a machine gun and the defendant consented to a search on that basis and said well I'll show you what guns I do have and the defendant happened to be a felon until he was prosecuted. To me that case is a far field from this case and I believe that the Parson case and Pagan Gonzalez are far more analogous statute. Are you arguing Mr. Greenlee that I understand you that when the agents mentioned that they were in the in the business of investigating child exploitation or whatever the term was that that did not totally blow their cover at that point that Mr. Bogorol was still could still been an impression that they were they were investigating somebody else? Yes your honor that is our position and again the reason why I say that is because that the testimony in the detention hearing the testimony of Agent Johnson was that I'm sorry I'm looking for it here they both told me that they were employed by school districts and they would be happy to assist. So if Mr. Bogomol had thought that this was actually an investigation into his conduct I don't think he would have been happy to assist. So that suggests to me that they were he believed consistent with the testimony of Agent Johnson and his wife that they thought that they were the victims of identity theft and they I think if the law enforcement had told the truth then Mr. Bogomol probably would not have consented to the to the search of his electronic devices. What do you do at the wait do you give any weight to the fact that the defendant claimed that sentencing that he gave them permission to search his phone in an attempt to lighten his sentence? I don't think at that point in time he that was going through his mind that's number one number two he probably didn't know that there was a suppression issue that could have been raised. I think the first time that that he learned that was when he spoke to me and it left out of me as something that wait a second this is an obvious suppression issue as many courts have found that this at the very least considering that the type of sentence that he faced as well as the lack of any other plausible defense that he may have had this was really his only chance at getting a favorable result for Mr. Bogomol and really he should have at the very least filed a motion to suppress and based on the authority cited in our briefing we think that it would have been meritorious had he done so. Right but this seems to undermine the idea that he didn't realize that there was something about him that could be in the phone. The idea that it was only for this other purpose or that he's being duped that doesn't go along with his idea the idea of him being duped. Well I think that he was probably advised by counsel to to to get credit for acceptance of responsibility on that basis I think that that's where that argument kind of was was pointed towards pardon me but I do think that he if you look at the uh the notes of his attorney when he first visited the client in the jail it says right there under the guise of identity theft and it says that we were the victims of they told us that we were the victims of identity theft to me that that's the best evidence that contemporaneous evidence near the time of the search that that showed that that he thought that they were the victims of identity theft and that's uh gave them consent to enter the residence in the first place so I would place greater greater weight on the the contemporaneous notes of his attorney than on the kind of rehearsed testimony that he gave during the course of the sentencing hearing which was I think targeted towards trying to get him greater a lighter sentence because of acceptance of responsibility counsel are you relying upon the custodial nature of the interrogation really I mean if he asked to be interviewed in private to be away from his wife it seems like that's a problem uh your honor that that wasn't uh an issue that was granted we didn't get a certificate of appeal abilities on the Miranda issue so we're not pursuing that here we don't have permission anymore okay so thank you I'm sorry I wasted your time sorry no not a problem your honor that's what I'm here for uh I'd like to stress also that um this is not the type of claim that is totally uncorroborated or wholly dependent on uh the assertion but the self-serving assertions of a criminal defendant and it's really actually it's unique in that regard not many uh post-conviction motions are as corroborated and substantiated as this one was we have the testimony of a detention hearing where special agent Johnson she admitted remarkably that we were she said we stated we were investigating a matter that someone was possibly using their identity on the internet we would then welcome inside the home so it's not his he's not just saying that that that was the sworn testimony of a the agent who conducted the search then you have the testimony of mrs Bogomol who said quote and when I when they came to the door I was under the impression that we were the victims of identity theft she later said that was the premise of why I thought investigators were there let me ask me there's a lot of overlapping standards here I mean he pled guilty right so he has to show I guess if his lawyer would have moved to suppress um I guess partly it's a show that there would have been a high like likelihood that suppression would have succeeded and then therefore he wouldn't have pled guilty what all does he have to show it just there's a lot of overlapping um questions here that's confusing for me to frame it up correctly your honor for purposes of of this particular argument and and this appeal here all he had to show was the indicia that there was a plausible claim so we can get to get in the hearing to get on the evidentiary get in the evidentiary hearing that's I'd like to stress the modesty of what we're asking for all we're asking for is an evidentiary hearing to prove up the case uh and if your honors would allow me to reserve the remainder of my time for rebuttal yes sir this one birch you're next may it please the court amy birch for the united states the district court did not abuse this discretion by declining to hold an evidentiary hearing on this ineffective assistance of council claim the district court had the evidence it needed in front of it from the record and what the record showed is that the agent never used the term identity theft that we keep saying here today what the agent told mrs bogemol at the front door was that she was investigating a matter that someone was possibly using their identity on the internet which was true they had information that someone had associated with this identity had downloaded or was engaging in these tip conversations with this teenage boy in louisiana and when they were welcomed inside just inside the door the agent said there was a table they sat down and they told the bogemol at that point this case involved child exploitation they did not hide the ball they did not lie to the defendant they did not lie to mrs bogemol there was in the initial discussion there was an address that came back to a different person and a credit card associated with mr bogemol and they're trying to sort out who is using mr bogemol's identity even if they suspect that it was mr bogemol and they have a a hunt and a spot and an inkling that it might be him they're not required to show up at the front door and tell him and we think you're our prime suspect they can say we're here to sort out who is using your identity and they also told them it relates to child exploitation and after both of those things happened mr bogemol gave his consent to them to search his phone and i'd like to go back to the conversation about their them saying that they were happy to assist um it seems that that conversation earlier according to uh to mr bogemol was that he was happy to assist because he didn't think he was the target but actually in the context of the conversation they told the bogemol this is a case that relates to children child exploitation and the response was we're school employees we're happy to assist with the inference being because we care about children that's why we're happy to assist because we're school people that's what they said and mr bogemol at that point i think it's important to remember we're still trying to hide all of this from his wife he can't say right there at the table no no no you can't look at my stuff because oh by the way i'm the one doing it all his wife is sitting right there we know that when he leaves the room later to go into another room to get his computer and the agent having seen questionable things on his phone follows him and says hey i think we need to talk about what's on your phone and he says okay but i don't want to do it in front of my wife that goes back to the happy to assist statement there's a reason that he doesn't speak up at that point he's still trying to hide it all from his wife as he does when he requests to be interviewed separately and away from his wife the agent saying yes we can talk to you you need to know you're free to leave that's all part of the detention testimony and i agree that this case is a little bit different than the ones we are ordinarily faced with in the terms of a failure to file the motion to suppress because ordinarily in the 2255 context when we see this claim related to a failure to file a motion to suppress we have a record that's not super well developed very often this record actually was quite developed because the agent testified at the detention hearing as to what she said we know that miss bogemol testified that it was her impression that that's what they were there about and she didn't necessarily indicate that that was her impression because the agent told her it was identity theft she testified that they had been victims of identity theft in the past and she thought to herself here we go again and made this this leak uh related to identity theft but in any event before anybody granted consent to look at any phone or any computer both of them were informed that it was a child exploitation offense that was being investigated now the day this case shows us that the agents are not required to tell the defendant every single thing they know they're not required to tell them at the moment that they encounter them you're our main guy right now they're they're only required to to not affirmatively mislead them and there was no affirmative misrepresentation here there was i'm trying to figure out who's using your identity on the internet which was true and it relates to child exploitation which was also true and after being informed of those the bogemals gave their consent your honor with respect to the need for an evidentiary hearing mr bogemol didn't indicate to the district court any additional facts that he needed to be developed at an evidentiary hearing he didn't present you know we need to talk more about what the agent or that person we might get this additional information there was no affidavit from mrs bogemol search yes my concern is i didn't see in the district court opinion where he cited the statute that does say basically the default is you get a hearing unless the record conclusively establishes otherwise um so i'm not sure if the district court viewed it through the correct statutory framework your honor uh i believe that the district court um 20 page opinion did view it through the correct statutory framework even though he did not specifically cite uh the the statute what he did is said i'm taking all of these facts and with all of these facts i determined based on all of this testimony that the consent um was voluntary that his will was overboard and i don't need more uh evidence or more testimony on that topic i can make that decision based on all of the evidence that i already have in front of me which was the evidence presented at the detention hearing and the information that mr bogemol uh put forth with his um 2255 motion and the district court also did say that it was not giving much weight to the attorney notes were just you know simply attached without any real explanation affidavit from the attorney nothing that that in the district court's view made those notes meaningful uh but even so the district court said and even if i consider them all they say is what i already know from the hearing and what i know from the hearing and what i've been able to determine is that this agent did not lie and that mr bogemol's will was not overboard his consent was valid based on those six factors that the court has to consider and um and all of those factors way um way in the favor of i'm sorry five factors way in the favor of of the voluntariness of this consent mr bogemol was not in custody there was no coercive police measures um he was very cooperative and he used that cooperation as you noted judge albright he used that cooperation at sentencing and at sentencing he even said and i'm quoting his sentencing uh statement it is no one's fault but my own that i am in this situation and i accept full responsibility that's not the statement of someone that's saying oh my gosh i got tricked into confessing by the police but it's not the police's fault it's my fault i did these things and he repeatedly emphasized his cooperation that was the whole point of a lot of the testimony at the detention hearing he didn't want to be detained he wanted to be out and so he was cooperative on being and that's how he was even at the house even though he didn't want to talk in front of his wife that's why at that very first table meeting they say yes we're happy to assist this defendant is an educated defendant he has two bachelor's degrees he was a journalist he worked for a newspaper in addition to being a high school teacher you're not really dealing somebody that's terribly unsophisticated or or doesn't understand these basic things and there's at least some evidence in the record that mr bogemol had the belief that no incriminating evidence would be found because there was a point at which when they had told him we're interested in this kick investigation that mr bogemol disappears into the back of the house and they don't know where he's gone his wife says oh he went to the bathroom they come back and later learned that that kick application which they know he was using because he told them he was using it and it's the same application that the kid in louisiana had reported him using um so they know they know he was using it they know it's on his phone at some point and they later learned that that was deleted they believed that it was deleted at the time that he disappeared to go to the bathroom and so there's at least some evidence that he had this subjective belief that i can turn my phone over to you and let you look at it and you're not going to find anything because the kick application isn't there um the agent was savvy enough to know what grinder was and an open grinder and saw the grinder uh photographs and that's when um they were able to determine that there was most likely at least things of concern if not outright contraband on that phone and having confronted mr bogemol about that he willingly agreed to go with them in the car down the street to have a conversation away from his wife the agent testified that she repeatedly told him both at the house and in the car that he was not under arrest that he was free and being aware of those things he nonetheless then confessed to multiple um multiple offenses i think in all there ended up being 179 photographs over 20 victims he confessed to eight victims at his own high school so this was not a situation where he was tricked into letting the police in and then there's something in plain view that they see they told him the truth they came from the house they told him even more detail he handed them his phone and then after being aware of what the agent saw he willingly went with them to have an additional further conversation most likely because he was hoping that his cooperation would lead to less serious charges than the ones he ended up facing um and all along his hope was a lesser sentence and you know some of the things that he did he could have faced a life sentence for and although ultimately he did get 720 months which i recognize for someone of his age may be the equivalent of a life sentence he had the hope at least that the judge might impose something at low end of the guideline range which was 30 years or even go below his cooperation was was his emphasis all along and your honor the the district court based on this record in this unusual situation did not need to have an additional evidentiary hearing to make the court's discretion his uh judge means findings uh regarding the facts are not clearly erroneous and the conclusions that he drew regarding the voluntariness of his consent are not incorrect and so i'm happy to answer any more questions from the court regarding the fact or the law that the government's position is that they're just simply with no abuse of discretion and the judgment should be affirmed all right i don't see or hear any questions so with that i'm happy to um uh seize my time thank you miss burke thank you your honor mr green lady you have five minutes thank you very thank you very much your honor um i have just five quick points um first with regard to the initial statement that law enforcement uh said to mrs bogomol it's almost exactly what was said to the defendant in parsons in that case they said quote there was a chance he could be the victim of identity theft so it's the same it's possible that you're the victim of identity theft uh second with regard to the address that's in the record it's not the address of a you know his father's name is martin bogomol so that takes care of that issue so that i don't think is the basis for for concluding that this that that there was any legitimate investigation into identity theft third with regard to the child exploitation uh statement it's not the same as telling mr bogomol that he's the suspect of an investigation i mean it's if you place it context if they first tell him you're the victim of identity theft and then they say oh and by the way we investigate child exploitation there you can reconcile those two statements uh and conclude as apparently mr bogomol did that somebody else was uh committing a crime and they were investigating the crime someone else was committing so i don't think it's that probative uh and even if there it was already after the initial fourth amendment violation which occurred when they entered the physical boundaries of the house and in addition to that if there's some conflict in the record as to what that statement meant and what what people believed that it meant then that's all the more reason for an evidentiary hearing uh fourth his wife wasn't out to lunch when she thought that this was an identity theft investigation we know that from the testimony of agent johnson she said that she told her at the door well that we're investigating whether somebody's possibly using your identity on the internet so it wasn't the case where she was thinking oh this was something else that happened in a past investigation she was told by johnson exactly that we are investigating the possibility that somebody is using your identity on the the notes of mr bogomol his attorney those were his attorney's notes the motion itself was sworn and and verified under penalties of perjury and he said these are the notes of my attorney and those notes say that law enforcement gained consent under the guise of identity theft so i think that that is the most important evidence in in the whole case his attorney was on notice of a meritorious suppression issue and failed to follow up advise mr bogomol of the viability of of a suppression issue or to file the motion to suppress that evidence and had he done so we believe that the motion as in parsons and as in tegan gonzalez the motion would have been well taken and could very well have led to the suppression of the evidence which in turn was the only way out for mr bogomol and so since we believe that he received ineffective assistance of counsel we would ask the court to at the very least remand for an evidentiary hearing if there are no further questions i'll rest thank you mr grayley